UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
---------------------------------X
                                  :
JIMMY AUGUSTO RESTREPO,           :
        Petitioner,               :    CASE NOS.:
                                  :
            v.                    :    3:09CV66 (EBB)
                                  :    3:99CR85 (EBB)
UNITED STATES OF AMERICA,         :
                                  :
        Respondent.               :
                                  :
---------------------------------X
```

### RULING ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255

Petitioner Jimmy Augusto Restrepo ("Restrepo") is serving a 293 month sentence following his guilty plea on one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841. Restrepo moves, *pro se*, to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. He alleges first that the Government breached the plea agreement it reached with him. Second, he makes several claims of ineffectiveness of counsel. Finally, he claims that he lacked counsel for nine months prior to pleading guilty, thereby depriving him of due process.

For the following reasons, Restrepo's Motion [doc. # 2] is DENIED.[1]

---

[1]The Court notes with displeasure many actions of the Government in responding to Restrepo's petition. First, after several extensions to respond to Restrepo's petition were granted following the Government's requests, the Court ordered that a response to its Order to Show Cause be filed on or prior to May 18, 2009. Instead, the Government filed a response on May 19, 2009 [doc. #12]. This document referenced exhibits from what was termed the Government's "Special Appendix." However, no appendix of exhibits was filed. On May 22, 2009, the Government filed an

## STATEMENT OF FACTS

The Court sets forth only those facts necessary to an understanding of the issues raised in, and decision rendered on, Restrepo's Motion.

On May 25, 1999, a task force of the FBI coordinated the arrests of thirty-seven people in Connecticut, New York and New Jersey.  These individuals were charged with conspiring to distribute substantial quantities of cocaine and cocaine base.  The arrests were the culmination of a six-month wiretap investigation, one of the objectives of which was to target Rudolfo Segura ("Segura"), a multi-kilogram cocaine supplier

---

amended response "primarily for the purpose of renaming the documents to which the government cites." [doc #13].  The amended response no longer referred to a Special Appendix (which was evidently the appendix filed with the U.S. Court of Appeals for the Second Circuit in response to Restrepo's appeal in 2001).  The amended response instead directly referenced many documents and transcripts that were again not filed with this Court.  In light of this oversight, on October 26, 2009, the Court ordered the Government "to file and serve copies of all relevant portions of all cited transcripts and other documents on or before Friday, November 6, 2009.  Courtesy copies shall be delivered to Chambers prior to 4:00 p.m. on that date." [doc. #20].  The Government failed to comply with this deadline and did not file any exhibits until November 13, 2009 [doc. #21].  The exhibit filed at that point by the Government was the Special Appendix referenced in the original response–not the individual documents and transcripts referenced in the amended response.  Additionally, (1) substantial portions of the responses filed by the Government were non-responsive to Restrepo's Motion and appear to have been copied verbatim from the Government's filing with the Second Circuit (including references to "this Court" which clearly were speaking of the Second Circuit); and (2) a substantial number of the quotations contained within the Government's responses were inaccurate reproductions of the record.

operating in the areas of Norwalk and Bridgeport, Connecticut. Restrepo was a leader of and a significant participant in this criminal enterprise.

On January 5, 2001, a federal grand jury in the District of Connecticut returned a Second Superseding Indictment, <u>United States v. Rudolfo Segura, et al.</u>, 3:99CR85 (EBB).  Count One of the Second Superseding Indictment charged Restrepo with conspiring to possess with intent to distribute fifty grams or more of cocaine base and five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

On March 28, 2001, Restrepo executed a plea agreement whereby he pleaded guilty to Count One of the Second Superseding Indictment.  The plea agreement provided in part that Restrepo "agreed and conspired with at least one other person to possess with the intent to distribute five kilograms or more of cocaine," an "offense [that] carries a maximum penalty of life imprisonment."  In the plea agreement, the Government agreed to recommend a three-level reduction under § 3E1.1 of the U.S. Sentencing Guidelines based on Restrepo's complete acceptance of responsibility.  The Government's recommendation was expressly "conditioned upon the defendant's full, complete, and truthful disclosure" to the Probation Office and to the Government of the circumstances of the offense committed.  Although the parties agreed to disagree regarding the specific quantity of narcotics

above five kilograms attributable to Restrepo, the plea agreement specifically noted the parties' understanding that a final narcotics "quantity determination [would] be made by the Court." Finally, the parties also agreed to disagree regarding the appropriateness of an upward adjustment for Restrepo's aggravating role in the offense.

The record from the change of plea hearing on March 28, 2001 shows that after Restrepo discussed the plea offer with his counsel off the record, the Court addressed him personally with respect to the plea agreement.  The Court put him under oath and informed him that he would need to answer questions so that the Court could be certain that he was pleading guilty voluntarily and knowingly, to which he stated he understood.  The Court explained his waiver of trial rights, other associated rights and the statutory penalty of ten years to life in incarceration, which he stated that he understood.  The Court inquired whether Restrepo was pleading guilty of his own free will, to which he said, "yes," and whether he had received any threats or been coerced to enter into the guilty plea, to which he answered, "no."  The Court established that Restrepo was familiar with the plea letter, that it had been translated for him, that he had reviewed and discussed it with his lawyer, Conrad Seifert, and that Attorney Seifert had answered any questions that he had.

The Court specifically inquired as to whether Restrepo

4

understood the provisions of the plea agreement, to which he stated, "yes."  The Court then reviewed the provisions of the plea agreement with him.  The Court advised Restrepo about the Government's agreement to recommend at that time a three-level reduction for acceptance, and advised Restrepo that "I will have to independently decide whether you are accepting responsibility, and if I determine not to grant you that reduction, you can't withdraw your guilty plea . . ."

The Court specifically noted that the parties had not been able to reach an agreement on quantity, that each party had a different position with respect to the amount of cocaine involved and that the Court would need to have a hearing to resolve that issue.  Restrepo stated that he understood.  The Court specifically discussed that the parties did not agree on his role in the offense, stated that "your role in the offense will play a part in determining what your sentencing guidelines may be" and told him that if it were found that he had a managerial role or were the head of the conspiracy, "you would be charged with extra points."  Restrepo affirmed that he did not think that the Government had promised him that the Court would give him a particular sentence.  The Court explained that once a Sentencing Guideline range was determined, the Court could go above or below the range, to which Restrepo said that he understood.

The Government set forth the evidence it had concerning his

crime, including the proof regarding his role and the quantity of cocaine.  Restrepo spoke and asked questions throughout the proceeding.  The Court again asked Restrepo whether he understood that "there will be a hearing at which the Government will attempt to show me that you really are responsible for more than 6 kilograms, and that they will be presenting witnesses at that hearing, and through your attorney, you will have the chance to cross-examine those witnesses."  Restrepo stated that he understood.

The Court inquired as to whether Restrepo had any other questions that he wanted to ask the Court, to which he replied, "no."  The Court asked him whether he understood everything that the Court had said to him, to which he replied, "yes."  Restrepo confirmed that he wished to plead guilty under the terms of the plea agreement, that he had reviewed the plea agreement and that he had signed it.  The Court found that there was a factual basis for the plea and that Restrepo had knowingly and voluntarily entered into it.  In the plea agreement, Restrepo acknowledged that he was satisfied with his attorney.  Moreover, he signed a certification that he read or had the plea agreement read or translated to him, that he had ample time to discuss the plea agreement with his lawyer and that he fully understood and accepted its terms.  Attorney Seifert also certified that he had thoroughly read, reviewed and explained this plea agreement to

6

his client, who had advised him that he understood and accepted its terms.  The change of plea was accepted and Restrepo's guilty plea was entered.

The May 4, 2001 Presentence Report ("PSR") prepared by the probation officer indicated that in light of all the evidence regarding Restrepo's role in the criminal enterprise and the fact that he insisted that his role was limited to a single six-kilogram transaction, it did not appear that he had clearly demonstrated acceptance of responsibility for the offense.  The probation officer calculated Restrepo's total offense level as 38, starting from a base level of 34 for 15-50 kilograms of cocaine, plus a four-level increase for a leadership role, with no reduction for acceptance of responsibility.  With no criminal convictions, resulting in a Criminal History Category I, the probation officer's calculation resulted in a Guidelines range of imprisonment of 235-293 months.  In addition, the PSR detailed the nature and circumstances of the offense charged, Restrepo's other criminal conduct and his offender characteristics, including his personal and family data, marital status, physical condition, substance abuse, mental and emotional health, educational and vocational skills and employment record.  The PSR also stated that there were no identified factors warranting departure from the Guidelines.  The PSR provided that, although the probation officer expected that more information about

Restrepo would be revealed both before and during the sentencing hearing, based upon what was then known, the probation officer believed that a sentence within the Guideline range was entirely appropriate.

On June 19, 2001, months after his guilty plea, the Court heard argument regarding Restrepo's motion for new counsel based on Attorney Seifert's alleged ineffectiveness.  At this hearing, Restrepo argued, *inter alia*, that Attorney Seifert forced him to sign the plea agreement, that the Government wanted "to present me as a leader. . . . They want to increase the quantity beyond 15 kilograms and I am not responsible for this;" that he was not a leader or responsible for more than 6 kilograms, that he had accepted responsibility; and that "[i]f the lawyer had led me to the cap of the guideline range; I would not be going right now through all this . . ."

After entertaining Restrepo's arguments, the Court stated, "I am not certain what Mr. Seifert could have done further for your benefit."  When Restrepo stated he was badly counseled, the Court told him that "you responded that you understood what we were talking about, that nobody threatened you or coerced you to get you to enter into a guilty plea [at the change of plea hearing]."

The Court heard further argument regarding Restrepo's motion for new counsel based on Attorney Seifert's alleged

8

ineffectiveness and denied the motion to dismiss counsel.

Following the evidentiary hearing, the Government and Restrepo filed memoranda in aid of sentencing in which each party proposed certain drug quantity calculations based on evidence adduced at the hearing.  The Government proposed that the Court attribute more than 50, but less than 150 kilograms of cocaine to Restrepo, which would result in a base offense level of 36 pursuant to U.S.S.G. § 2D1.1(c)(2), increase his offense level by four levels for Restrepo's leadership role in the offense pursuant to U.S.S.G. § 3B1.1(a) and provide no reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 due to Restrepo's dishonesty.  This proposal would have resulted in a total offense level of 40, subjecting Restrepo to a sentencing range under the Guidelines of 292 to 365 months.

Restrepo's sentencing memorandum filed by his attorney made clear that he objected to any quantity enhancement and the role enhancement advocated by the PSR and presented a vigorous affirmative defense "[k]nowing that the stakes were incredibly high" based on the enhancements for which the Government argued. Specifically, Restrepo argued that the Government had failed to prove beyond a preponderance of the evidence that he was involved with more than six kilograms of cocaine, recounted the evidence and attacked the credibility of the Government's witnesses. Restrepo also argued that he was not, and the evidence did not

show he was, a leader, that he should receive the three level reduction for acceptance of responsibility set forth in the plea agreement and that he should not receive an enhancement for obstruction of justice.

At Restrepo's initial sentencing on October 26, 2001, although the Court noted expressly that it was "clear in [its] own mind that at least 50 kilograms was involved," it finally assigned Restrepo responsibility for 15 to 50 kilograms as "a conservative estimate." The Court stated that any suggestion that Restrepo was only responsible for six kilograms of cocaine was "absolutely absurd" and "almost an insult." Additionally, "out of an abundance of caution," the Court declined to attribute any heroin quantities to Restrepo for purposes of sentencing.

The Court increased the base offense level by four levels for Restrepo's role as leader and did not award a reduction for acceptance of responsibility. The Court stated at sentencing that "there [was] no question in [her] mind but what the Government, through that hearing, ha[d] established: Mr. Restrepo was the leader." Based on that, the Court found that Restrepo "more than qualifies for the four-level enhancement for a leadership role."

The Court found the suggestion that Restrepo's sentence be reduced for acceptance of responsibility "mind-boggling" and "simply out of the question." The Court was "troubled" by the

10

similarity of testimony between Defendant Barrientos and
Restrepo, and mentioned that it had previously given an
obstruction-of-justice enhancement to Barrientos for his
testimony that was similar to and supported by Restrepo's
position, which the Court believed to "be clearly perjurious,"
but declined to give such an enhancement to Restrepo because he
did not testify.

The Court then found that the resulting offense level of 38,
at intersection with a Criminal History Category I, presented a
sentencing range of 235 to 293 months.  The Court brought up its
"concern about the fact that there might have been more than 50
kilograms," which would place Restrepo in the next sentencing
guideline range, which would begin at 292 months.  With respect
to that, the Court stated "[a]nd if I were to have documented
that position, I would have sentenced the Defendant to the bottom
of that guideline range.  And so the sentence . . . falls within
both categories."  The Court then imposed a 293-month sentence on
Restrepo to be followed by a five-year period of supervised
release.

On October 31, 2001, Restrepo filed a timely notice of
appeal to the Second Circuit.  On appeal, Restrepo challenged,
*inter alia*, this Court's use of a preponderance standard with
regard to drug quantities, its imposition of a four-level role
enhancement, its decision not to downwardly depart on the basis

11

of acceptance of responsibility and also argued that the Government breached the plea agreement with Restrepo when it did not recommend such a reduction.

On February 27, 2004, the Second Circuit summarily affirmed this Court's judgment with respect to Restrepo.  United States v. Williams, 90 Fed. Appx. 412, 413 (2d Cir. 2004).

Restrepo sought certiorari to the U.S. Supreme Court which was granted on January 24, 2005.  The case was remanded to the Second Circuit for further consideration in light of United States v. Booker, 543 U.S. 220 (2005).  Restrepo v. United States, 543 U.S. 1100 (2005).

On March 16, 2005, before United States v. Fagans, 406 F.3d 138 (2d Cir. 2005), was decided, the Second Circuit ordered a limited remand to this Court in light of Booker and its decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).

On September 27, 2005, this Court ordered simultaneous briefing from the parties regarding sentencing in light of the now-advisory Sentencing Guidelines.  Restrepo and the Government agreed that, because he had preserved claims under Apprendi v. New Jersey, 530 U.S. 466 (2000), at his original sentencing, a full resentencing was required by Fagans.  In his resentencing memorandum, Restrepo argued, *inter alia*, that the sentence he had previously received was unreasonable in light of the section 3553(a) factors and that he had received a sentence greater than

that of his co-defendants, which created unwarranted sentencing disparities.

On January 9, 2006, this Court presided over the hearing for a full resentencing.  At the resentencing hearing, the Court made factual findings and determined that the same sentence as originally imposed would be appropriate even under the now-advisory Guidelines.  It therefore vacated Restrepo's original judgment and imposed a sentence identical to his original sentence.  On February 2, 2006, this Court entered an Amended Judgment.

Restrepo appealed this Court's February 2, 2006 Amended Judgment on a number of grounds, claiming that: (1) his sentence was unreasonable because the now-advisory Guidelines' final offense level was miscalculated; (2) his sentence was unreasonable because Booker and United States v. Gigante, 94 F.3d 53 (2d Cir. 1996), required that sentencing factors be proven beyond a reasonable doubt or at least be considered based on a reasonable doubt standard because the cumulative impact of the sentencing enhancement factors added over thirteen years to Restrepo's sentence; (3) his sentence was unreasonable and excessive because it reflected an unwarranted sentencing disparity; (4) his sentence was unreasonable and excessive because it was "greater than necessary" under 18 U.S.C. §3553(a); and (5) the re-sentencing court misconstrued its role and

committed procedural and structural error which required that the case be remanded for a full re-sentencing hearing.

On October 15, 2007, the Second Circuit affirmed this Court's sentencing decision.  Restrepo then filed a petition for rehearing with the Second Circuit, which was denied on November 6, 2007.  Restrepo filed a petition for a Writ of Certiorari, which was denied on February 28, 2008.  This Motion followed.


## LEGAL ANALYSIS

To obtain collateral relief under 28 U.S.C. § 2255, a petitioner must show that his "sentence was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255.  Habeas corpus relief is an extraordinary remedy that "run[s] up against society's strong interest in the finality of criminal convictions."  Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995).  "As a general rule, relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994) (internal citations and quotations omitted).

Because Restrepo is acting *pro se*, the Court must read his "submissions broadly so as to determine whether they raise any colorable legal claims."  Parisi v. United States, 529 F.3d 134,

139 (2d Cir. 2008).

I.  Breach of Plea Agreement

    Restrepo claims that the Government reneged on its agreement
to recommend to the Court that it reduce his adjusted offense
level by three levels for acceptance of responsibility.  He also
makes vague allegations about both the Court's failure to provide
him with a downward departure for acceptance of responsibility
and that his guilty plea was coerced, involuntary and not
knowing.  The first and second allegations are procedurally
defaulted because they were already raised on direct appeal and
the third allegation is unavailing.

    Restrepo raised the issue of a breach of the plea agreement
in his initial direct appeal.  Restrepo framed the question
presented to the Second Circuit in 2001 as "[w]hether the
government breached its plea agreement with the defendant when it
refused to recommend the three level adjustment downward for
acceptance of responsibility . . ."  Similarly, Restrepo alleged
in his 2001 appeal that this Court should be ordered to "apply
the three level reduction for acceptance of responsibility."  In
ruling on that appeal, the Second Circuit summarily affirmed this
Court's judgment.  Williams, 90 Fed. Appx. at 413.  Because these
issues were raised and considered on direct appeal, Restrepo is
barred from raising them in this Motion.  See United States v.
Pitcher, 559 F.3d 120, 123 (2d Cir. 2009) (issues barred in

section 2255 motion because issues had been raised on direct appeal); Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992).

Restrepo's argument that his guilty plea was coerced, involuntary and not knowing is unavailing.  Restrepo presents no evidence in support of this contention.  Moreover, the record from the March 2001 change of plea hearing recounted above, *supra*, demonstrates that Restrepo's change of plea was knowing and voluntary.

II.  Ineffective Assistance of Counsel

Restrepo alleges a multitude of instances of ineffective assistance of counsel, all of which are unavailing.

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy a two-part test.  First, he must demonstrate that his counsel's performance "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688.  The petitioner bears the burden of proving both of these elements.  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).

In connection with the first prong of the Strickland inquiry, a court's scrutiny of counsel's performance is highly deferential.  Strickland, 466 U.S. at 689.  A court must

16

determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id</u>.  If deficient performance is shown, the court must then evaluate whether there was prejudice.  It does so by determining "whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different." <u>McKee v. United States</u>, 167 F.3d 103, 106 (2d Cir. 1999).  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Mayo v. Henderson</u>, 13 F.3d 528, 534 (2d Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 694).

## A.  Violations of ABA Professional Conduct

Restrepo's first claim of ineffective assistance of counsel is that his counsel's advice fell below a reasonable standard as contemplated by the American Bar Association ("ABA") for two main reasons: first, his counsel was "clueless" regarding how Restrepo could not receive the three level sentence reduction for acceptance of responsibility that had been contemplated in the plea agreement and second, that his counsel did not advise him about the possibility that he could receive a sentence enhancement for his leadership role in the criminal venture or for the quantity of drugs involved.  Restrepo claims that if his "counselor was better prepared and thoroughly investigated all proposed sentencing guidelines pertinent to Petitioner,

Petitioner most likely would have received less prison time." Petitioner's claims do not constitute ineffective assistance of counsel.

Regarding his first allegation, "Prevailing norms of practice as reflected in American Bar Association standards and the like are guides to determining what is reasonable, but they are only guides." Strickland, 466 U.S. at 688 (internal citation omitted). Consequently, the issue of ineffective assistance of counsel before the Court is not whether Restrepo's counsel met each component of Rule 1.1 of the ABA's Model Rules of Professional Conduct, but rather whether he complied with the dictates of Strickland.

The question, then, is whether Restrepo's counsel performed in a manner that "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. Restrepo relies heavily on a letter written by Attorney Seifert on April 16, 2006 in support of his claim that his attorney's services were ineffective. The letter states that Restrepo "wanted to be sentenced for a conspiracy involving six kilograms of cocaine and . . . did not want to receive any guideline increases based on your role in the offense. . . . Despite a lot of communications and negotiations with Assistant United States Attorney Robert Appleton, *in the end it came down to either go to trial or sign the plea letter which you did end up signing.*" (emphasis in

18

original).  The letter continues, "Putting it a different way,
for all of the sentencing issues and factors (except the safety-
valve and except potential downward departures) to be locked in
and agreed on, you would have to sign your name to being a
manager and to have conspired to trafficking in 15-50 kilograms."
Following that statement, Attorney Seifert makes the statement on
which Restrepo relies at this time: "*This letter confirms that I
never advised you that by having a protracted sentencing hearing
on the two unagreed issues of quantity of cocaine and your role
in the offense that you would lose the promised three level
subtraction for acceptance of responsibility.*  I was <u>clueless</u>
about that exposure. . . ." (emphasis in original).

The Government argues, and the Court agrees, that it appears
from the letter that Attorney Seifert, the Government and
Restrepo clearly discussed the range of possible enhancements for
leadership and for drug quantity.  Restrepo, despite a "lot of
communications and negotiations" with AUSA Appleton, refused to
accept an offer to plead guilty to just a two-level enhancement
as a lower level manager and a drug quantity of 15-50 kilograms.
This implies that there was greater exposure than two points for
being more than just a lower level manager ("he [the prosecutor]
would only go so far as to have you be a lower level manager of
two people") and that based on that letter, Restrepo and his
lawyer had contemplated the exposure to 15-50 kilograms of

cocaine.  To claim now that he was not advised by his attorney regarding the potential managerial and quantity Guideline enhancements is disingenuous.

Thus, Restrepo's lawyer's conduct was objectively reasonable in advising his client on the plea agreement to which Restrepo agreed.

The second prong of the <u>Strickland</u> test is that a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>. at 688.  The petitioner bears the burden of proving this element as well.  <u>Kimmelman</u>, 477 U.S. at 381.  Restrepo does not set forth how, much less meet his burden to demonstrate that, he suffered prejudice because he never alleges that he would have proceeded to trial if provided different advice from counsel.  <u>United States v. Doe</u>, 537 F.3d 204, 213-14 (2d Cir. 2008) ("To advance an ineffective assistance of counsel claim in the context of a plea, the defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . To satisfy the second prong . . . in the context of plea negotiations, the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to

trial.") (internal citations and quotations omitted).  Attorney Seifert's letter suggests just the contrary–it appears that AUSA Appleton made clear at some point that the plea offer was "take it or leave it" and Restrepo "took it" with knowledge of its contents and ramifications.  Consequently, Restrepo did not suffer any prejudice at the hands of Attorney Seifert.

Regarding his second allegation, that his counsel did not advise him about the possibility that he could receive a sentence enhancement for his leadership role in the criminal venture or for the quantity of drugs involved, the record is clear that this is false.  Both the letter analyzed above and the colloquy during the change of plea hearing demonstrate Restrepo's understanding of the proceedings and that he stated under oath that his attorney had advised him regarding the possible sentence enhancements.

## B.  Failure to Argue for Acceptance of Responsibility

Restrepo's second argument regarding the ineffectiveness of his counsel is in regard to his failure to receive a downward departure for acceptance of responsibility.  He claims that had his counsel argued more vociferously for the departure, he would have received it.  This claim has no merit–Restrepo's counsel did seek a downward departure for acceptance of responsibility, but the determination of whether a defendant is entitled to such a sentence reduction is a decision to be made by the Court.

Restrepo acknowledged this at the time he entered a guilty plea.
When sentencing Restrepo, the Court was aware of Restrepo's
counsel's argument, but held that Restrepo was not entitled to
the departure.  Neither prong of Strickland is satisfied on this
claim-counsel performed effectively and nothing counsel could
have done differently would have led to a different result, so
Restrepo suffered no prejudice by his counsel's performance.

C.  Failure to Argue Against Aggravating Role

     Restrepo's third argument regarding the ineffectiveness of
his counsel is in regard to his sentence enhancement for his
leadership role in the criminal enterprise.  Like his prior
allegation, Restrepo argues that had his counsel argued more
vociferously against the enhancement, he would not have received
it.  This claim has no merit-Restrepo's counsel did seek to avoid
having the enhancement levied, but the determination of whether a
defendant is to receive such an enhancement is a decision to be
made by the Court.  Again, this is a truth that Restrepo
acknowledged at the time he changed his plea.  When sentencing
Restrepo, the Court was aware of Restrepo's counsel's argument,
but nevertheless found that Restrepo was a leader of the criminal
enterprise and sentenced him as such.  Neither prong of
Strickland is satisfied on this claim-counsel performed
effectively and nothing counsel could have done differently would
have led to a different result, so Restrepo suffered no prejudice

by his counsel's performance.

D.  Failure to Argue Sentencing Disparity

Restrepo titles his fourth argument for ineffective assistance of counsel as "Failure to Argue Sentencing Disparity," but his memorandum instead argues that his sentence was unjustly disparate compared to his codefendants and potentially other similarly situated defendants nationwide.

This assault on his sentence is procedurally barred as it was raised to the Second Circuit on appeal where it failed.  See, e.g., Pitcher, 559 F.3d at 123 (issues barred in section 2255 motion because issues had been raised on direct appeal); Cabrera, 972 F.2d at 25.

E.  Failure to Argue Reasonableness

Restrepo's fifth argument for ineffective assistance of counsel is that his 293 month sentence is unreasonable and that his counsel failed to argue against it rigorously.  This argument is unavailing.  Attorney Seifert did seek a lower sentence for Restrepo than was imposed.  Even if Restrepo's counsel had argued more strongly for a lesser sentence, he would not have prevailed, so Restrepo suffered no prejudice.  Regarding the reasonableness of the sentence itself, this argument is procedurally barred as it was raised on direct appeal to the Second Circuit which explicitly found the sentence reasonable.  See, e.g., Pitcher, 559 F.3d at 123 (issues barred in section 2255 motion because

issues had been raised on direct appeal); <u>Cabrera</u>, 972 F.2d at 25.

F.  Due Process Violation

Restrepo's sixth argument of ineffective assistance of counsel concerns the voluntariness of his guilty plea.  He claims that his guilty plea was involuntary and that his lawyer prevented him from speaking at his sentencing hearing.  He also claims that there was a due process violation because of "Petitioner's codefendants' uncorroborated testimonies."  These claims are difficult to follow, but even reading them as liberally as possible due to Restrepo's *pro se* status, none merit relief.

Restrepo seems to suggest that his guilty plea was involuntary because he did not receive the sentence that he expected.  This is not a claim of involuntariness.  In open court during his change of plea hearing, as detailed above, *supra*, Restrepo was questioned regarding whether he understood the ramifications of pleading guilty and that he would be sentenced by the Court on the basis of the evidence heard, the PSR and the memoranda submitted by the parties.  The record demonstrates that Restrepo understood the consequences of pleading guilty.  To claim now that the plea was involuntary because the sentence was not what was expected is disingenuous and not actionable.

Restrepo claims that he "firmly believed he needed to inform

24

the court of his culpability in the instant crime." It is
unclear exactly what Restrepo suggests that he would have told
the Court that would have aided him-if he claims that he would
have told the Court that he was more responsible for the crimes
to which he pleaded guilty, that would conflict with his
extensive argumentation about his minimal role and lack of
leadership position. If Restrepo claims that he would have
instead told the Court how much he was *not* responsible for the
crimes to which he pleaded guilty, he can hardly argue that he
was penalized for not receiving a downward departure for
acceptance of responsibility (as he does throughout his
petition). In either case, regardless of what Restrepo's counsel
did or did not do in permitting Restrepo to speak at the
sentencing hearing, Restrepo suffered no prejudice.

Finally, Restrepo confusingly claims that there was a due
process violation because of "Petitioner's codefendants'
uncorroborated testimonies." Again, there is no allegation of
ineffectiveness of counsel in this claim. Regardless, the
decision as to what evidence to allow at a sentencing hearing is
in the discretion of the court and, as such, there was no due
process violation in the evidence that this Court allowed to be
presented. United States v. Pugliese, 805 F.2d 1117, 1123 (2d
Cir. 1986) ("Sentencing hearings ultimately are conducted within
the discretion of the district court. . . . Under Fed. R. Crim.

P. 32(c)(3)(A) a district court's options include affording a
defendant, at the minimum, an opportunity to comment on the
report and, in the district court's discretion, to introduce
testimony or other information relating to any alleged factual
inaccuracy contained in it.  The choice followed rests in the
sound discretion of the sentencing court.") (internal citations
and quotations omitted).

G.  Elements of Indictment

     Restrepo's seventh claim of ineffectiveness of counsel is
essentially that evidence was presented at the sentencing hearing
that his attorney had not discussed with him previously, namely
money laundering and heroin trafficking.  As before, his argument
is that had his attorney argued more strenuously against the
presentment of certain evidence, his sentence would have been
shorter.  And, like the other arguments, this is untrue.
Regardless of the actions of Restrepo's counsel in regards to the
presentation of "overt acts, that were not in Petitioner's
indictment, [that] were presented to the Court, by witnesses
[and] not [by] physical evidence" the outcome would have been the
same.  Moreover, the Court specifically noted in sentencing
Restrepo that it did not consider any evidence of heroin
trafficking.  Consequently, Restrepo can demonstrate no prejudice
on this claim and so his claim of ineffective assistance of
counsel fails.

III.  Lack of Legal Representation

Restrepo states that he appeared for arraignment with Attorney Gonzalez.  He continues that on that same day, Attorney Gonzales met with the prosecutor and then informed Restrepo that he could not represent him in the District of Connecticut and that the Court would appoint new counsel.  Restrepo claims that he then went without counsel for up to nine months prior to the appointment of Attorney Seifert.  During this intermediate period, Restrepo claims that his codefendants received superior plea agreements with the Government and that they implicated his role in the criminal enterprise beyond what it was.  He claims that were it not for this gap in representation, his interests would have been better defended and he would have received a plea agreement more similar to his codefendants.  This claim is meritless.

As the Government states, Restrepo raised this issue previously during the March 9, 2001 hearing on his motion to dismiss his counsel as ineffective.  Upon hearing the claim, the Court made detailed inquires to determine the facts underlying it through an on-the-record discussion with the Government, Attorney Seifert and Restrepo.  After consulting the record, the Court concluded that Restrepo was appointed counsel immediately and that counsel had not withdrawn or been terminated, but instead represented Restrepo until a motion for appointment of counsel

was filed in late December 1999 and granted on January 6, 2000.
Moreover, the Government stated that Restrepo's original counsel
had visited the office at least two or three times to discuss the
case.  The Court concluded:

> THE COURT: [I]t would appear that although Mr. Gonzalez
> [Restrepo's former counsel] had not formally filed an
> appearance in this case, he was still acting as counsel
> until such time that the Defendant filed a motion for
> appointment with me.  As I indicated, the record is
> clear that that motion was promptly acted upon.
>
> So, I don't think it's accurate to say that there was a
> period of time when he was not represented.  It is true
> there was a period of time when a formal appearance had
> not been entered for him.  But from what I heard this
> afternoon, during that period of time, his interests
> were being pursued by counsel, first by Mr. Gonzalez,
> and secondly by his present counsel [Attorney Seifert].

As the record establishes and as set forth above, Restrepo
was not without legal representation for nine months and at all
times had his interests protected by both Attorney Gonzales and
Attorney Seifert which afforded him the due process to which he
was entitled.

## CONCLUSION

For the foregoing reasons, the motion [doc. #2] is DENIED.
A certificate of appealability will not issue, Restrepo having
failed to make a substantial showing of the denial of a
constitutional right.  The Clerk is directed to enter judgment
and close this case.

SO ORDERED.


_____/s/_____
ELLEN BREE BURNS
SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this 5th day of January, 2010.